IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KAREN A. BATY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**METROPOLITAN LIFE** )<br>**INSURANCE COMPANY,** )<br>)<br>**Defendant.** )<br>) | Case No. 17-1200-EFM-GEB |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's request to engage in discovery outside the administrative record ("Memorandum of Law Regarding Discovery," ECF No. 21) and Defendant's Memorandum concerning the same topic (ECF No. 20).  Having reviewed the parties' briefing, and portions of the administrative record (ECF Nos. 13-19, sealed), the Court is now prepared to rule.  For the reasons set forth below, Plaintiff's request (**ECF No. 21**) is **GRANTED.**

**I.      Background[1]**

Plaintiff Karen A. Baty initially filed this case in the Sedgwick County District Court[2] against defendant Metropolitan Life Insurance Company ("MetLife"), the issuer

---

[1] The information recited in this section is taken from the parties' briefs regarding discovery (ECF Nos. 20-21); portions of the Administrative Record (ECF Nos. 13-19), and Plaintiff's Petition attached to the Notice of Removal (ECF No. 1, Ex. 1).  This background information should not be construed as judicial findings or factual determinations.

[2] *Baty v. Metropolitan Life Insurance Company*, No. 2017-CV-001709-CE (Sedgwick County Dist. Ct., filed Jul. 25, 2017).

and administrator of a long-term disability plan ("Plan") for Plaintiff's former employer, Textron Credit Union.  In late 2013, Plaintiff was diagnosed with breast cancer and underwent a variety of treatments, including surgery and chemotherapy.  Although she tried to work through her chemotherapy treatments, she claims she was ultimately unable to perform her job because of cognitive difficulties resulting from her treatments. Textron terminated her employment in November 2014.

After her termination, Plaintiff applied for long-term disability ("LTD") benefits, and Defendant denied her claim.  She claims Defendant's decision to deny her benefits was arbitrary, capricious, and not supported by substantial evidence.  Defendant hired two physicians to review her case, and Plaintiff alleges those physicians used inaccurate and unreasonable review procedures, and based their decision on erroneous facts. Plaintiff brought this case to recover LTD benefits under the employee benefit plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Defendant MetLife removed the case to this federal court on August 11, 2017. During the Scheduling Conference held on September 22, 2017, the parties announced they had reached an impasse regarding the appropriateness of discovery outside the administrative record reviewed by MetLife when determining Plaintiff's eligibility for LTD benefits.  (*See* Order, ECF No. 12).  In light of the discussions during the scheduling conference, the Court ordered the parties to brief the issue of the scope of discovery. Having had the opportunity to review the parties' written arguments, the Court is now prepared to rule.

## II.     Legal Standard

When deciding whether discovery is appropriate in an ERISA denial of benefits case, the Court must acknowledge the standard by which it reviews the claims administrator's decision. The Supreme Court determined "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[3] If the benefits plan gives the administrator discretionary authority, the Court applies an arbitrary and capricious standard of review.[4] The parties' briefs each suggest the Plan granted MetLife, as claim fiduciary, discretionary authority to interpret the Plan. Therefore, the Court weighs the parties' arguments regarding the scope of discovery under the auspices of the arbitrary and capricious standard of review.

When utilizing the arbitrary and capricious standard to review the administrator's decision, "the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision."[5] Therefore, the court's review is usually "limited to the administrative record—the materials compiled by the administrator in the course of making his decision,"[6] and it "is the unusual case in which

---

[3] *Jaremko v. ERISA Admin. Comm.*, No. 10-1137-RDR, 2011 WL 42881, at *1 (D. Kan. Jan. 6, 2011) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).
[4] *Id*. (citing *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d 1161, 1167 (10th Cir. 2006)).
[5] *Id*. (citing *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 380 (10th Cir. 2002).
[6] *McNeal v. Frontier AG, Inc.*, No. 12–1284–RDR, 998 F. Supp. 2d 1037, 1041 (D. Kan. 2014) (citing *Holcomb v. Unum Life Ins. Co. of America,* 578 F.3d 1187, 1192 (10th Cir. 2009) (internal citation omitted)).

3

the district court should permit supplementation of the record."[7]  "The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety."[8]  Courts do not look favorably on attempts to discover or present additional substantive evidence regarding the applicant's disability.[9]  But courts have permitted discovery, outside the administrative record, under such "exceptional circumstances" as when a conflict of interest exists or "when there is evidence that a claimant could not have presented in the administrative process."[10]

An inherent conflict of interest arises when a claims administrator acts in a dual role as both administrator/evaluator and insurer/payor of a claim.[11]  The court reviewing a denial of benefits considers the conflict of interest as a factor in its abuse of discretion analysis, weighing it "more or less heavily depending on the seriousness of the conflict."[12]  Courts generally view the conflict as more important "where circumstances suggest a higher likelihood that it affected the benefits decision" and as less important "where the administrator has taken active steps to reduce potential bias and to promote accuracy."[13]

Courts in this District and the Tenth Circuit apply the scope of discovery standard of Fed. R. Civ. P. 26(b) to requests for extra-record discovery related to a dual-role

---

[7] *Id.* (citing *Hall v. UNUM Life Ins. Co. of Am.,* 300 F.3d 1197, 1203 (10th Cir. 2002)).
[8] *Id.* (citing *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1163 (10th Cir. 2010).
[9] *See Murphy*, 619 F.3d at 1159, n.4 (noting a plan participant "is not entitled to a second chance to prove his disability") (citing *Sandoval,* 967 F.2d at 381) (other internal citations omitted).
[10] *McNeal*, 998 F. Supp. 2d at 1041 (citing *Hall*, 300 F.3d at 1203).
[11] *Meyer v. UNUM Life Ins. Co. of Am.*, No. 12–1134–KHV, 96 F. Supp. 3d 1234, 1245 (D. Kan. 2015) (citing *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 112 (2008)).
[12] *Id.* (citing *Murphy,* 619 F.3d at 1157 n. 1).
[13] *Id.* at 1246 (citing *Glenn,* 554 U.S. at 117).

conflict of interest.[14] Under this standard, parties are entitled to discovery regarding matters that are both "relevant to any party's claim or defense and proportional to the needs of the case."[15] But "neither a claimant nor an administrator should be allowed to use discovery to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim."[16] The district court must balance its "substantial discretion in handling discovery requests under Rule 26(b),"[17] with "both the need for a fair and informed resolution of the claim and the need for a speedy, inexpensive, and efficient resolution of the claim."[18]

### III.   Discussion

The parties agree that Defendant acted in a dual role regarding the LTD Plan: first, as the insurer (the entity that would pay out benefits); and second, as the administrator (the evaluator making the decision whether benefits are payable).  Plaintiff contends discovery outside the administrative record is appropriate because "there are red flags within the administrative record that suggest the dual role conflict infected" Defendant's decision (ECF No. 21, at 6).  Plaintiff lists examples of these red flags, such as that the reports prepared by Defendant's two Independent Physician Consultants ("IPCs") utilized the same formats.  Additionally, the IPCs contacted Plaintiff's treating doctors with "cold calls" rather than scheduling interviews, which caught the physicians unprepared.

---

[14] *Parker v. Sun Life Assur. Co. of Can.*, No. 16-2554-JAR-JPO, 2017 U.S. Dist. LEXIS 42951, at *2 (D. Kan. Mar. 23, 2017) (citing *Murphy*, 619 F.3d at 1162).
[15] *Id.* (citing Fed. R. Civ. P. 26(b)(1), as amended in 2015).
[16] *Id.* (citing *Murphy*, 619 F.3d at 1162-63).
[17] *Id.* at *3 (citing *Murphy*, 619 F.3d at 1164).
[18] *Murphy*, 619 F.3d at 1164.

Plaintiff's most troubling allegation is that both IPC reports contained factual inaccuracies about their interviews with the treating physicians in ways that favored Defendant. Plaintiff seeks discovery into Defendant's use of, and relationship with, its IPCs to determine whether it inappropriately coaches them in their review of claims.

Defendant disagrees that these examples support discovery outside the administrative record. It contends the administrative record already demonstrates what information and instruction the IPCs were given regarding their investigation of Plaintiff's claim, and no additional discovery is warranted. Additionally, Defendant points out that both Plaintiff's counsel and the treating physicians responded to the IPCs' initial reports with their concerns regarding the factual errors and procedural issues they found in the IPCs' initial reports. As a result of those notifications, the IPCs addressed and considered those concerns, and determined the issues did not change their evaluation of Plaintiff's claim. All of the correspondence surrounding Plaintiff's concerns are contained in the administrative record, and therefore Defendant concludes those alleged inaccuracies are not indicative of any bias on the part of the IPCs.

But this Court is not so certain. Defendant argues the administrative record demonstrates its referral process and selection of their IPCs (ML00379-ML00383, ECF No. 14, *sealed*). The Court has reviewed those portions of the record, and the forms do show that Defendant requested consulting physicians which specialize in neuropsychology and oncology, specifically directed the IPCs to contact Plaintiff's medical providers, and directed the IPCs to ask targeted questions of Plaintiff's treating physicians. But this information does *not* demonstrate, in a more empirical sense, how

6

Defendant selects, trains, or otherwise directs its consultants—and, therefore, how it avoids bias and promotes accuracy in its claims reviews. The short statements showing a request for specific consultants tells nothing about how, or if, the IPCs' methodologies or opinions are reviewed; whether any unique training is provided to consulting physicians; how the consulting physicians are paid; or other information indicative of the relationship between Defendant and its IPCs. Such policies and procedures utilized by Defendant could later assist the court in its analysis of Defendant's dual-role conflict.

Defendant relies, in part, on *Rutherford v. Reliance Standard*,[19] a 2011 District of Kansas case where extra-record discovery was largely denied because many of the plaintiff's discovery requests sought information already contained in the administrative record. However, Defendant ignores that the court in *Rutherford*, despite its partial denial, did permit *some* extra-record discovery, and actually ordered the defendant to produce any policies or guidelines on which the administrator relied to make its decision.[20] The court denied Rutherford's request for statistical data concerning the company's prior claims and denials as an "unwieldy, burdensome, and speculative fishing expedition,"[21] but in his requests, Rutherford sought information spanning four years.

In a more recent decision in this District, *Parker v. Sun Life Assurance Company of Canada*,[22] the court permitted extra-record discovery regarding limited statistical data,

---

[19] *Rutherford v. Reliance Standard Life Ins. Co.*, No. 10-2456-JWL-KMH, 2011 WL 4376557, at *1 (D. Kan. Sept. 20, 2011).
[20] *Id.* at *4.
[21] *Id.*
[22] No. 16-2554-JAR-JPO, 2017 U.S. Dist. LEXIS 42951, at *4.

7

related to that employer's plan for the limited time frame spanning the administration of Parker's claim.[23]  The court also permitted discovery of performance evaluations of the decision-makers, including medical personnel, who reviewed the plaintiff's claim for benefits.[24]  The court found that this type of extra-record information fell within the scope of Rule 26(b).

Likewise, when weighing the seriousness of the dual-role conflict in this case, the court may ultimately examine whether Defendant, as administrator of the Plan, took "active steps to reduce potential bias and to promote accuracy."[25]  It is true that Defendant's physician consultants directly addressed Plaintiff's concerns about discrepancies in the initial reports, concluded those criticisms did not change their decisions, and these concerns and conclusions are included in the administrative record. But even as these specific issues are addressed within the administrative record, the Court understands Plaintiff's concern that the record does not go far enough to show what steps Defendant takes—in a more general sense—to reduce overall bias in its processes and procedures.  Some limited extra-record discovery may reveal additional insight, such as whether Defendant's IPCs are true consultants or paid employees, how it trains or directs its IPCs to ask specific questions, or whether it requires the physicians to utilize specific

---

[23] *Id.  See also, e.g.*, *Winfrey v. Hartford Life and Acc. Ins. Co.*, No. 14-1034-EFM-JPO, 2014 WL 4981436, at *5 (D. Kan. Oct. 3, 2014) (where the parties agreed to production of statistical claims data for a three-year period).
[24] *Parker*, 2017 U.S. Dist. LEXIS 42951, at *4.
[25] *Meyer*, 96 F. Supp. 3d at 1246.

procedures in their review.[26]  Defendant points to none of this relevant information as present in the administrative record.

In many of the previous cases discussed here, those courts were tasked with reviewing specific extra-record discovery requests for appropriateness under Fed. R. Civ. P. 26(b).[27]  In this case, Plaintiff generally requests extra-record discovery prior to her issuance of specific requests, so it is more difficult to discern whether the specific discovery she ultimately seeks regarding the conflict will fall within the parameters of Rule 26(b).

At this juncture, however, Plaintiff has met her burden to show the propriety and relevance of some limited extra-record discovery.  Plaintiff's request for discovery does not appear to be an attempt to supplement the record with substantive evidence of her disability or an attempt to muster better evidence than she provided for the initial claim review.[28]  Rather, she is attempting to demonstrate the alleged seriousness of the conflict between Defendant's role as the insurer and its role as the administrator of the Plan. Defendant has not demonstrated that the discovery would be disproportionate as either

---

[26] *See id*. at *1247 (considering UNUM's procedures in handling the claim, including the use of leading questions by its medical experts, as a part of the court's conflict analysis).

[27] *See, e.g.*, *Parker,* No. 16-2554-JAR-JPO, 2017 U.S. Dist. LEXIS 42951, at *1-*7 (deciding plaintiff's motion to compel responses to specific discovery requests); *Winfrey*, No. 14-1034-EFM-JPO, 2014 WL 4981436, at *6 (deciding plaintiff's motion to compel responses to its written discovery); *Rutherford*, No. 10-2456-JWL-KMH, 2011 WL 4376557, at *3-*5 (deciding plaintiff's motion to compel defendant's responses to specific written requests).

[28] *Murphy*, 619 F.3d at 1159 n.4 (citing *Jewell v. Life Ins. Co. of N. Am.,* 508 F.3d 1303, 1309 (10th Cir. 2007) (quoting *Hall,* 300 F.3d at 1203) (further quotation omitted).

9

overly burdensome or costly.[29]  Plaintiff's request will be granted; however, Plaintiff is cautioned to narrowly tailor her requests in light of the discussion herein.

**IT IS THEREFORE ORDERED** that Plaintiff's request to engage in discovery outside the administrative record (**ECF No. 21**) is **GRANTED**.

**IT IS FURTHER ORDERED** that, as previously ordered, the Court will convene a supplemental scheduling conference **on October 12, 2017, at 10:00 a.m.** to establish appropriate discovery deadlines.  The conference will be held by telephone, to be initiated by the Court.

**IT IS SO ORDERED.**

Dated this 10th day of October, 2017.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[29] *See Winfrey*, No. 14-1034-EFM-JPO, 2014 WL 4981436, at *6 (finding the court was "not persuaded that producing these materials would be overly burdensome or overly costly for defendants").